**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAXIM CRUDE OIL, LLC<br>*PLAINTIFF*, | §<br>§<br>§ | |
| V. | § | CIVIL CAUSE 2:21-CV-00090 |
| NOIL CORP., INC. AND MORRELL STEVE NEELY<br><br>*DEFENDANTS*. | §<br>§<br>§<br>§<br>§ | |

**PLAINTIFF MAXIM CRUDE OIL, LLC'S RESPONSE TO DEFENDANT MORRELL STEVE NEELY'S MOTION TO DISMISS**
**[Related Docket No. 8]**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now Comes Maxim Crude Oil, LLC (herein "Plaintiff" or "Maxim"), and files this Response to Defendant Morrell Steve Neely's Motion to Dismiss (the "Motion" or "Motion to Dismiss"), and would respectfully show the Court as follows:

## I.
## PRELIMINARY STATEMENT

1. This case arises out of a fraudulent scheme enacted by Defendant Morrell Steve Neely ("Neely") whereby he used the corporate form of Noil Corp., Inc. ("Noil") to perpetuate a fraud by illegally converting funds Plaintiff (a Texas resident) was fraudulently induced to send to Defendants pursuant to an agreement between the parties for the purchase of a crude product known as "Naptha". The agreement at issue was to be performed in whole or in part by Defendants in Texas, including by agreeing to deliver its product to Plaintiff in Corpus Christi, Texas, refined in Texas refineries, and delivered to Texas terminals for Plaintiff to be picked up. [Plaintiff's First Amended Complaint, ¶12]. The funds that were illegally converted were wired by Plaintiff to a bank account that Defendants, through their agents, represented to Plaintiff was an "escrow

account" where it would be held until the product Plaintiff sought to purchase from Defendant was first "lifted" or picked up by Plaintiff. The funds were only wired ***after*** Defendants represented it had procured the Naptha crude product Plaintiff was purchasing. Despite Plaintiff wiring $2,000,000.00 to Defendants in two separate wires, Defendants failed to deliver a single gallon of product to Plaintiff and refused to refund $600,000.00 of Plaintiff's funds, which Defendants now claim has been dissipated with only $160,000.00 remaining resulting in a gross windfall of 100% pure profit by Defendant Neely at the expense of Plaintiff.

2. This diversity case was originally filed on April 23, 2021, in Nueces County District Court asserting claims and causes of action against Defendants Noil Corp., Inc. ("Noil") and Morrell Steve Neely ("Neely") (collectively "Defendants"). Plaintiff asserted causes of action against Defendants for fraud (both fraud by omission and fraudulent misrepresentation), breach of contract, breach of fiduciary and intentional conversion, and alternative relief of unjust enrichment. [Orig. Pet., Dkt. No. 1, tab 2]. Plaintiff also sought a temporary restraining order and preliminary injunction against the Defendants to prevent the transfer or disposition of funds Plaintiff alleges were illegally converted from Plaintiff. *Id.*

3. Defendant Neely's Motion to Dismiss seeks dismissal based upon (1) lack of personal jurisdiction pursuant to Rule 12(b)(2); (2) failure to state a claim pursuant to Rule 12(b)(6); and (3) failure to plead fraud with specificity pursuant to Rule 9(b). [See, Motion to Dismiss, ¶4].

4. Plaintiff respectfully asks the Court to deny this Motion for the reasons set forth herein and because the Court has personal jurisdiction under Defendant Neely as the person who directed the fraudulent scheme and used the corporate form of Noil as a sham to perpetrate a fraud, and injustice would result by only holding Defendant Noil liable for the fraudulent conduct made

the basis of Plaintiff's lawsuit. Because the District Court can exercise personal jurisdiction over the claims against Noil, including the claims of fraud, the Court may also exercise personal jurisdiction against Neely because both are the alter egos of each other; therefore, Neely is not protected from personal jurisdiction by the corporate veil. *Cappuccitti v. Gulf Indus. Products Inc.*, 222 S.W.3d 468, 481 (2007); *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 714 (Tex. App. – Houston [1st Dist.] 2002, pet. denied) (holding that one basis for piercing the corporate veil is the alter ego doctrine, which applies when there is such unity between a corporation and an individual that the separateness of the corporation ceased and asserting jurisdiction over only the corporation would result in an injustice) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986).

5. The basis for Defendant Neely's Motion to Dismiss relies heavily on his allegation that "after the initial identification of the parties at page 2, Plaintiff only mentions Steve Neely twice in the rest of its [Original Petition]." [Defendant Neely's Motion to Dismiss, ¶2]. Of course, Defendant's Motion fails to mention the paragraph following the identity of each defendant in Plaintiff's Original Petition filed in State Court (which has since been amended at Dkt. No. 15) which states that:

> [e]ach reference herein to any Defendant, or to Defendants, is a reference to the civil conspiracy to defraud Plaintiff through actions and omissions taken by one or more of its members within the State of Texas, and in which each Defendant was a member, and from time to time, by which each Defendant-member committed the fraud and fraudulent acts injuring Plaintiff. Accordingly, Plaintiff alleges that each member of the civil conspiracy conducts business of the conspiracy in the State of Texas for the purpose and with the intent to defraud and accordingly, is jointly and severally liable for each and every act of the conspiracy. Committed at any time during, before or after, each of the Defendants' respective conduct on behalf of the civil conspiracy.

[See, Plaintiff's Original Petition, ¶6; see also, Plaintiff's First Amended Complaint, ¶7]. Thus, in direct contrast to Defendant Neely's contention that Plaintiff's pleading only references Neely twice in the remainder of the pleading, Plaintiff's pleading references Neely throughout the

pleading, grouping the corporate Defendant, Noil Corp., and the individual Defendant, Neely, by referring to them simply as "Defendants" because Noil was the alter ego of Neely that was used by him to perpetrate the fraud made the basis of Plaintiff's lawsuit. The very premise upon which Defendant Neely's Motion is based is outright false.

6. Texas courts have long held that corporate officers are personally liable when they commit or knowingly participate in tortious or fraudulent acts even though the conduct occurred while the officer was acting on behalf of the corporation. *See, e.g., Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26, 32 (Tex. App.—San Antonio 2003, pet. denied); *Kingston v. Helm*, 825 S.W.3d 755, 764-67 (Tex. App.—Corpus Christi 2002, pet. denied); *Castleberry v. Branscum*, 721 S.W.2d 270 (1986) (recognizing the "sham to perpetrate a fraud" basis for piercing the corporate veil).

7. Moreover, Plaintiff has timely amended its Complaint to include alter ego and piercing the corporate veil claims against Defendants for their liability in connection with the fraudulent scheme they orchestrated involving agreements prepared by Defendants relating to the purchase and sale of crude product in Texas, for delivery to Plaintiff in Texas. [Plaintiff's First Amended Complaint, ¶¶ 86-94]. Specifically, Plaintiff's live complaint alleges that the fraud committed by Noil was "at the direction of Neely", that Noil "was used by Neely to perpetuate a fraud", and that. "[t]he corporate form of Noil was used as an essentially unfair device, that is, used as a sham" by Neely. [Plaintiff's First Amended Complaint, ¶¶ 87-88].

8. As to Defendant Neely's arguments that Plaintiff failed to state a claim pursuant to Rule 12(b)(6) and failed to plead fraud with specificity pursuant to Rule 9(b), it is noteworthy that the Court has considered the fraud allegations in the very pleading Defendant Neely claims fails to plead factual allegations sufficient to state a claim. In the Court's Order granting Plaintiff's Preliminary Injunction entered on May 24, 2021, the Court stated that "Plaintiff has shown a

likelihood of success as to at least one of those causes of action – fraudulent misrepresentation." [Doc. No. 14, p. 4].

9. Plaintiff's Original Petition and Plaintiff's First Amended Complaint alleges facts sufficient to recover on its claims asserted against Defendant Neely, individually. They also make clear that this Court has jurisdiction over Defendant Neely and establish Neely's minimum contacts with Texas by purposefully availing himself of the privileges and benefits inherent in conducting business in Texas, by contracting with Plaintiff (who is a resident of the State of Texas) to provide product to Plaintiff in the State of Texas, and by reaping a windfall of pure profit at the expense of Plaintiff. As such, this Court should deny Defendant Neely's Motion to Dismiss.

## II.
## PROCEDURAL HISTORY

10. Plaintiff originally filed this lawsuit on April 23, 2021, in Nueces County District Court.

11. On May 3, 2021, Defendants filed its Notice of Removal, removing this case to this Court based upon Diversity Jurisdiction. The removal filed by Defendants removed jurisdiction by the Nueces County District Court therefore canceling the injunction hearing set to be heard by the State Court on May 5, 2021.

12. On May 13, 2021, Defendants filed

a. Defendant Noil's Motion to Dismiss based upon (1) failure to state a claim pursuant to Rule 12(b)(6); and (2) failure to plead fraud with the required specificity pursuant to Rule 9(b) [Dkt. No. 10]; and

b. Defendant Neely's Motion to Dismiss seeking dismissal based upon (1) lack of personal jurisdiction pursuant to Rule 12(b)(2); (2) failure to state a claim pursuant to Rule 12(b)(6); and (3) failure to plead fraud with specificity pursuant to Rule 9(b) [Dkt. No. 8]; and

c. Defendant's Answer to Plaintiff's Original Petition originally filed in State Court on April 23, 2021. [Dkt. No.11].

13. Plaintiff believes Defendant Neely's Motion to Dismiss is without merit. Furthermore, the complained-of pleadings were filed pursuant to the Texas rules of civil procedure that are not subject to the obligations of *Iqubal* and *Twombly* standards and to the extent this Court believes pleading deficiencies exist in Plaintiff's Original Petition, Plaintiff amended its complaint on May 26, 2021 to address any possible concerns. [Doc. No. 15].

14. However, even prior to Plaintiff filing its First Amended Complaint, on May 20, 2021, a hearing was held on Plaintiff's Emergency Motion for Preliminary Injunction and on May 24, 2021, the Court entered its Order granting Plaintiff's Preliminary Injunction which enjoined and restrained Defendants "from transferring, withdrawing, or otherwise removing any of the remaining funds in the trade account that Plaintiff had wired to the trade account." The Court's Order issued the preliminary injunction to be in effect pending final resolution of the case of the merits or until further Order from the Court. [Dkt. No. 14]. Importantly, this Court's Order discusses Plaintiff's fraudulent misrepresentation claim at length and stated that "Plaintiff has shown a likelihood of success as to at least one of those causes of action – fraudulent misrepresentation." [Dkt. No. 14, p. 4].

## III.
## THIS COURT HAS
## PERSONAL JURISDICTION OVER DEFENDANT NEELY

15. Defendant Neely begins his Motion to Dismiss with a comprehensive statement of "Factual Background." These purported facts have nothing to do with this Honorable Court's determination of the merits of Plaintiff's well-plead Complaint and Defendant Neely's Motion. This Honorable Court must take as true the facts set out in the live Complaint and construe those pleadings in the light most favorable to the Plaintiff. More to the point, in urging a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), a Defendant must "… (admit) the facts alleged in the

complaint, but (challenge) plaintiff's rights to relief based upon those facts." *Telephonic Servs. Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Yet the Defendants spend most of their Motion reciting a series of purported "facts" they want this Honorable Court to consider in support of its Motion to Dismiss.

16. As noted below, federal pleadings are not "fact wars" but must be limited to concise "short and plaint statement" of the facts sufficient to give fair notice of the claims. Fed. R. Civ. P. 8(A)(2). In every event, Plaintiff's Petition, and Plaintiff's First Amended Complaint alleges facts sufficient to recover on its claims asserted against Defendant Neely, individually. They also make clear that this Court has jurisdiction over Defendant Neely and establish Neely's minimum contacts with Texas by purposefully availing himself of the privileges and benefits inherent in conducting business in Texas.

17. As discussed in more detail below, this Court has personal jurisdiction over Defendant Neely either under even the most basic traditional minimum contacts analysis. This Court also has personal jurisdiction over Neely because Neely used the corporate form of Noil as a sham to perpetrate a fraud and because Noil and Neely are the alter egos of each other and Neely is therefore not protected from personal jurisdiction by the corporate veil.

**A. Personal Jurisdiction – Applicable Law**

18. When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting *Mink v. AAAA Development LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral

testimony, or any combination of the recognized methods of discovery.'" *Id*. at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts. *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined … by th[e] Court." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, *Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

19. Since the Texas long-arm statute extends as far as constitutional due process allows, the court must only consider whether exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 66 S. Ct. 154, 158 (1945). Once a plaintiff satisfies these requirements, a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin. V. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010).

20. "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). The relevant inquiry here is whether the court can exercise specific

jurisdiction over Defendant Neely.

21. A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the nonresident defendant's contacts with the forum state. *Gundle Lining Construction Group Corp. v. Adams Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends the traditional notions of fair play and substantial justice." *Gundle Lining*, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas*, 9 F.3d at 419 (citing *World-Wide Volkswagon Corp. v. Woodson*, 100 S. Ct. 559, 567 (1980)).

22. There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum state are relevant, not the unilateral activity of the plaintiff or a third party. *Sangha v. Navig8 ShipManagement Private Limited*, 882 F.3d 96, 103 (5th Cir. 2018) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). Second, the contacts relied upon must be purposefully rather than random, fortuitous or attenuated. *Id.* (citing *Walden*, 134 at 1123). Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Burger King*, 105 S. Ct. at 2183. A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

**B. Minimum Contacts – *Alter Ego***

23. As an initial matter, Plaintiff's First Amended Complaint alleges in great detail that Noil and Neely are alter egos of each other. Plaintiff's allegations include, but are not limited to, the following: (1) "[a]ll allegations of the actual fraud of Noil were committed by or through its agent, officer and director Neely, or by agents of Noil at the direction of Neely"; (2) "Defendant Noil is also the alter ego of Defendant Neely and was used by Neely to perpetuate a fraud described in this suit"; (3) "[t]he corporate form of Noil was used as an essentially unfair device, that is, used as a sham, authorizing the court to act in good equity and disregard the usual legal rules governing corporate liability"; and (4) "[d]isregard of the corporate entity of Noil is to prevent the use of the corporate entity as a cloak for fraud or illegality or to work an injustice to the injury of Plaintiff." [Plaintiff's First Amended Complaint, ¶¶87-89].

24. Defendant Neely does not contest the Court's exercise of personal jurisdiction over Noil. Moreover, the contacts with the State of Texas are sufficient to establish that Noil entered into a contract with Plaintiff through e-mail while Plaintiff was in Texas under Texas law that was performable in Texas and that Noil was a party to the allegedly fraudulent conversion of Plaintiff's funds. The contacts are also sufficient to establish that Neely interacted with Plaintiff in Texas through Noil in connection with both the execution and performance of the contract Plaintiff alleges it was fraudulently induced to enter into. Thus, if the actions of Noil that occurred in and were directed towards Texas may be imputed to Neely under the alter ego doctrine, the Court may exercise personal jurisdiction over Neely and no further analysis need be performed for this Court to determine that such jurisdiction over Neely exists.

25. A court may, under appropriate circumstances, pierce the corporate veil and bring shareholders or others within its jurisdiction as well. *BMC Software Belgium, N.V. v. Marchand*,

83 S.W.3d 789, 798 (Tex. 2002). One basis for piercing the corporate veil is the alter ego doctrine, which applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and asserting jurisdiction over only the corporation would result in an injustice. *Cf. Howell v. Hilton Hotels Corp*., 84 S.W.3d 708, 714 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). This standard also applies to reverse-piercing cases where asserting jurisdiction over only the individual would result in injustice. *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) (recognizing, in a context of liability, that courts can reverse pierce a corporation's veil based on finding of alter ego).

**C. Neely Has "Minimum Contacts" with the State of Texas**

26. Because Plaintiff's injuries arise from or are directly related to Neely's contacts with the State of Texas, this court may exercise specific jurisdiction over Neely. *Gundle Lining Construction Group Corp. v. Adams Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). Neely purposely directed activities giving rise to Plaintiff's claims toward the State of Texas. Some of Neely's conduct which directed activities toward the State of Texas was by using Noil (a corporation which Neely is the owner and CEO) to conduct business in Texas. This includes directing Noil to enter into an agreement that provides for performance in Texas. [Plaintiff's First Amended Complaint, ¶¶ 10, 13, 44]. The agreement at issue was prepared by Noil and/or Neely and relate to the purchase and sale of crude product in Texas, for delivery to Plaintiff in Texas. [Plaintiff's First Amended Complaint, ¶¶ 86-94].

27. Furthermore, as alleged in paragraph 18 of Plaintiff's First Amended Complaint, Defendant Neely is the owner of Defendant Noil Corp., who touts his accomplishments throughout Noil's website (which is accessible to residents of Texas) in order to attract customers all over the

country, including customers located in Texas:

a. "Shell, ExxonMobil, Chevron, Texaco, BP Phillips 66, Vitol, and British Petroleum (BP) are some of the major industry players to which Noil does business, and ***this testifies to Steve's reputation***…" [See, Plaintiff's Amended Complaint, ¶18].

b. "Few people can say they know an industry inside-out – ***and Steve is one of them***. He learned by doing: preparing payroll, placing orders, towing cars, and rebuilding engines; ***Steve has 'been there, done that'***. His dad and uncle also showed him how to work with people, how to treat and retain customers, and how to do business 'right'. 'Right' is how Noil Corp Inc. has been doing it for over 60 years, and ***with Steve Neely at the helm, 'right' is how it will continue to be done***." [See, Plaintiff's Amended Complaint, ¶18].

Thus, Noil, which is owned and controlled by Neely, uses Neely's accomplishments to advertise to customers in Texas, and Neely, as the owner and CEO of Noil, derives substantial benefit from Noil's activities in Texas, including from profiting from the sale of crude products, or from entering into agreements with Texas residents for services to be performed in Texas, requiring they pre-pay up to $2 million for the products being sold as occurred in this case.

28. It is undisputed that Noil does business in Texas, and therefore undisputed that a Texas court can exercise personal jurisdiction over Noil as a nonresident defendant doing business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). The statute lists three activities that constitute "doing business": (1) contracting with a Texas resident when either party is to perform the contract in whole or part in Texas; (2) committing a tort in whole or in part in

Texas; and (3) recruiting Texas residents for employment inside or outside of Texas. *Id*. This list, however, is not exclusive, and the statute's "doing business" requirement is limited only by the requirements of federal due process guarantees. *Koll Real Estate Group, Inc. v. Purseley*, 127 S.W.3d 142, 146 (Tex. App. – Houston [1st Dist.]. 2003, no pet.). Noil, which was directed by Neely, contracted with a Texas resident to perform services in whole or in part in Texas. Moreover, Neely committed a tort in whole or in part in Texas by making fraudulent representations to a Texas resident to induce it to enter into an agreement performable in Texas, which include representing that Noil could source the product for Plaintiff from his numerous industry refinery contacts in the Nueces County area that he did substantial business with, such as the Valero refinery and numerous "other backup terminals" in the area. [See, Plaintiff's First Amended Complaint, ¶25].

29. Neely represented to be in constant communications with the refineries and terminal locations in Texas to facilitate Plaintiff's access to the terminals for the product Noil was claiming to have procured for Plaintiff. [Plaintiff's First Amended Complaint, ¶25]. These representations were made directly by Neely. There is no dispute that Neely purposefully availed himself of the privilege of conducting activities within the State of Texas.

30. Furthermore, Noil's website touts its national presence, claiming "Noil Corp Inc. has served the ***country*** for 60 years with a wide range of service." [Plaintiff's First Amended Complaint, ¶17]. Consistent with Neely's representations to Plaintiff, Noil's website claims to have "access to fuel terminals across the nation" and to be "among the leading fuel distributors across the United States." [Plaintiff's First Amended Complaint, ¶17]. Thus, the exercise of jurisdiction over Neely does not offend the traditional notions of fair play and substantial justice as Neely is clearly availing himself of the privilege of conducting activities within the State of

Texas.

31. Importantly, while Neely's Motion to Dismiss argues that the only fraudulent misrepresentations alleged to have been made regarding the treatment of Plaintiff's funds as escrow funds were made by persons other than Neely, such as Noil's Vice President, Jennifer Watson, the fraudulent misrepresentations alleged do not solely pertain to treatment of the funds as escrow funds. The misrepresentations actually begin with Defendant Neely touting his company as a business enterprise with business connections in Corpus Christi, Nueces County, Texas and that it could source the product for Plaintiff from its numerous industry refinery contacts in the Nueces County area that he did substantial business with, such as the Valero refinery and numerous "other backup terminals" in the area. [See, Plaintiff's First Amended Complaint, ¶25]. In fact, these representations are consistent with Noil's representations on its own website touring its distribution network and access to terminals "across the nation":

> GETTING TO KNOW NOIL PETROLEUM
>
> With more than 60 years of experience and access to fuel terminals across the nation, we're one of the leading fuel distribution networks in the United States. See how we can help you in our new video.

[Plaintiff's First Amended Complaint ¶17]. Moreover, Noil's website touts its national presence, claiming "Noil Corp Inc. has served the country for 60 years with a wide range of service. Our presence is felt nationally and locally." [Plaintiff's First Amended Complaint, ¶17].

32. Put simply, Neely availed himself of the privilege of conducting activities in Texas by seeking customers in Texas, touting his relationships with Texas refineries, directing Noil to enter into contracts performable in Texas, and obtaining substantial profits from business activity in the State of Texas as the direct beneficiary of any funds Noil received from Plaintiff, a Texas resident. There is also no dispute that the contacts with Texas were purposeful. Neely and Plaintiff

were in constant communication, and Neely represented to be using his own contacts to facilitate the sale of product in Texas for delivery to Plaintiff in Texas. This was all done by Neely in seeking the benefits, advantages, and/or profits by availing himself of the jurisdiction. This Court has personal jurisdiction over Neely and Neely's Motion to Dismiss Based Upon Lack of Personal Jurisdiction should be denied.

## IV.
## RESPONSE TO DEFENDANT NEELY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### A. Response to Neely's Motion to Dismiss Claiming Plaintiff Failed to State a Claim for Relief

33. Defendant Neely's Motion to Dismiss pursuant to Rule 12(b)(6) claiming Plaintiff failed to state a claim for relief is wholly without merit. Remarkably, Defendant Neely suggests that Plaintiff has no legal remedy against Neely for the facts plead. Defendants Motion to Dismiss argues that which cannot be considered in a Rule 12(b)(6) Motion – that because Plaintiff's Original Petition references Neely and Noil as "Defendants", it does not specify any factual allegations against Neely, individually.[1] However, not only must this Court accept Plaintiff's well-plead facts as true, but also when considering a motion to dismiss filed under Rule 12(b)(6), the court must construe those pleadings *with all reasonable inferences* drawn in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *see, also Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Furthermore, Defendant Neely's contention is false. Plaintiff's complaint alleges that although Noil received the money from Plaintiff initially, Noil failed to keep the funds from Plaintiff in an escrow account and instead converted those funds for

---

[1] When considering a motion to dismiss filed under Rule 12(b)(1) or (6), the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *see, also Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir.2005) [The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff."].

Neely's own use. Plaintiff also alleges that all of this conduct was directed by Neely.

34. Under these applicable standards, motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir.1981); *See, also Access Mediquip L.L.C. v. UnitedHealth Group Inc*., 2013 WL 3049293, *1, (S.D. Tex., 2013) [citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir.2011), further citing *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir.2009)].

35. "To survive a 12(b) motion to dismiss the Plaintiff must (only) plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007).[2] *Access Mediquip* recognizes that "[w]hen there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.[3] This does not require detailed factual allegations. Facial plausibility[4] means simply that the plaintiff has pleaded "factual content that *allows the court to draw the reasonable inference* that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 687, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required. *Id*. at 1949 (quoting *Twombly,* 550 U.S. at 555). Thus, so long as Defendants can draw the reasonable inference that the defendant is liable for the misconduct alleged, Neely's Motion must be denied. Given Plaintiff's allegations against Neely, individually, combined with its explanation that the reference to each Defendant is a reference to the civil conspiracy to defraud Plaintiff, Neely's Motion does not meet this burden.

---

[2] quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), cert. denied, 552 U.S. 1182 (2008))The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *See also Lee v. Dish Network, L.L.C.*, 2013 WL 6057844, *2 (S.D. Tex., 2013): *Romspen Inv. Corp. v. West Point Village LLC*, 2013 WL 5775672 (S.D.Tex., 2013).

[4] "The plausibility standard [for a complaint] is not akin to a probability requirement" *Iqbal*, 556 U.S. at 687; *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012). Rather, it is only when the alleged facts reflect merely "sheer possibility" that a claim has not been properly stated. *Iqbal*, 556 U.S. at 687

36. As Justice David Souter explained, alternative inferences cannot defeat plausible allegations, and a court simply should not be weighing the evidence or inferences –

> [b]ut that it is possible that other, undisclosed facts may explain the sequence better. Such a possibility does not negate plausibility, however; it is simply a reminder that plausibility of allegations may not be matched by adequacy of evidence."

*Sepulveda v. Dept. of Educ. Of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (sitting as Retired Supreme Court Justice). Thus, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)." Finally, the United States Supreme Court set out the standard for determining the sufficiency of a complaint under Rule 12(b)(6): "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

**B. Response to Motion Claiming Failure to State Fraud Claims with Particularity**

37. As part of Defendants delay strategy, evidenced by this series of Rule 12(b)(6) Motions seeking dismissal of every one of Plaintiff's claims, Defendant Neely seeks dismissal of Plaintiff's fraud claims alleging that Plaintiff failed to state such claims with particularity, arguing that Neely was not referenced individually and that Neely is not mentioned anywhere in Plaintiff's fraud claims. [Neely's Motion to Dismiss, ¶ 24]. Once again, this argument is based upon the premise that Plaintiff's reference to "Defendants" (plural) is not a reference to Neely, individually, when Plaintiff's complaint addressed precisely that issue when discussing the civil conspiracy to defraud Plaintiff. [See, First Amended Complaint, ¶7].

38. Notwithstanding the completely inaccurate straw-man summary of Plaintiff's allegations given by Defendant Neely in its Motion, Plaintiff amended its Complaint to include detailed allegations and claims against Defendants for alter ego and piercing the corporate veil

alleging that the corporate form of Noil was used as an unfair device, used as a sham, and the Court should therefore disregard the corporate veil. Plaintiff's Amended Complaint also alleges that Neely used the corporate entity as a cloak for fraud or illegality or to work an injustice to the injury of Plaintiff. [Plaintiff's First Amended Complaint, ¶¶86-90]. Clearly, Plaintiff alleges that any fraud committed by Noil, or alleged to have been committed by Noil, should be imputed upon Neely as the alter ego of Noil.

## V.
## REQUEST FOR ALTERNATIVE RELIEF

39. Although Plaintiff believes that he has properly alleged sufficient legal and factual basis, supported by Texas law, to support each claim, to the extent that this Court determines that the pleadings are factually or legally insufficient on any basis for dismissal, Plaintiff requests an opportunity to amend and clarify such pleading deficiency. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) recites the rule that

> "[u]nder the liberal pleading presumption, discretion 'may be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend.' Rule 15(a) requires a trial court to 'freely give leave when justice so requires.' Leave to amend is not automatic, but a district court needs "a 'substantial reason' to deny a party's request for leave to amend.'"

The United States Supreme Court set out the standard for determining the sufficiency of a complaint under Rule 12(b)(6):

> "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Grisham v. United States*, 103 F.3d 24, 25-26 (5th Cir.1997). "This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994); *Barnes v. Barnes*, 2004 WL 691202 at *5 (N.D.Tex. 2004) (citing *Hitt v. City of Pasadena*, 561 F.2d 606,

608 (5th Cir.1977)).

40. To the extent that additional pleadings would be required prior to properly assert a claim and avoid dismissal, Plaintiff requests alternatively an opportunity to respond to the Court's expressed concern and amend its pleadings for the first time in response to the issues raised by the Defendants.

WHEREFORE, Plaintiff requests this Court deny Defendant Neely's Motion to Dismiss in all things, and for such other and further relief to which Plaintiff may be entitled, both at law and in equity.

Dated: June 3, 2021.

Respectfully Submitted,

/s/ *Antonio Ortiz*
Antonio Ortiz
State Bar # 24074839
Shelby A. Jordan
State Bar # 11016700
**JORDAN & ORTIZ, P.C.**
500 N. Shoreline, Suite 900
Corpus Christi, Texas, 78401
Telephone: (361) 884-5678
Telecopier: (361) 888-5555
Email: aortiz@jhwclaw.com
sjordan@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2021, a true and correct copy of the foregoing was served on the parties listed below via the court's CMECF electronic filing or via email.

Matthew R. Beatty (mbeatty@bnsfirm.com)
Michael L. Navarree (mnavarre@bnsfirm.com)
Beatty Navarre Strama, PC
901 S. MoPac Expy.
Building 1, Suite 200
Austin, Texas 78746

Mary J. Schwartz (mschwartz@schainbanks.com)
Schain Banks
Three First National Plaza
70 W. Madison Street, Suite 5300
Chicago, IL 60602

*/s/ Antonio Ortiz*
Antonio Ortiz