```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE SOUTHERN DISTRICT OF TEXAS

 3                     CORPUS CHRISTI DIVISION

 4   MAXIM CRUDE OIL, LLC,          §    CASE NO. 2:21-cv-00090
                                    §    CORPUS CHRISTI, TX
 5   VERSUS                         §    WEDNESDAY,
                                    §    DECEMBER 15, 2021
 6   NOIL CORP., INC., ET AL        §    10:30 AM TO 10:47 AM

 7                        MOTION HEARING

 8            BEFORE THE HONORABLE DAVID S. MORALES
                 UNITED STATES MAGISTRATE JUDGE
 9
                          APPEARANCES:
10

11       FOR THE PARTIES:             SEE NEXT PAGE

12       COURT REPORTER:              UNKNOWN

13       COURT CLERK:                 UNKNOWN

14

15

16

17

18

19

20

21              TRANSCRIPTION SERVICE BY:

22              Veritext Legal Solutions
             330 Old Country Road, Suite 300
23                 Mineola, NY 11501
             Tel: 800-727-6396 ▼ www.veritext.com
24
         Proceedings recorded by electronic sound recording; transcript
25               produced by transcription service.
```

```
1                              APPEARANCES:

2

3    FOR THE PLAINTIFF:             JORDAN & ORTIZ, PC
                                    Antonio Ortiz
4                                   500 N Shoreline Blvd.
                                    Suite 900
5                                   Corpus Christi, TX 78401
                                    361-884-5678
6

7    FOR THE DEFENDANTS:            BEATTY NAVARRE STRAMA PC
                                    Michael Navarre
8                                   901 S. Mopac Expy.
                                    Building 1, Suite 200
9                                   Austin, TX 78746
                                    512-879-5050
10

11                          (APPEARING TELEPHONICALLY)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    CORPUS CHRISTI, TEXAS; WEDNESDAY, DECEMBER 15, 2021; 10:30 A.M.
 2              CLERK:  Good morning.  Court calls civil action C-21-
 3    90, Maxim Crude Oil, LLC v. Noil Corp. Inc., et al.  May I have
 4    appearances by counsel?
 5              MR. ORTIZ:  Good morning, Your Honor.  Antonio Ortiz
 6    here for the plaintiff, Maxim Crude Oil, LLC.
 7              MR. NAVARRE:  Good morning, Your Honor.  Michael
 8    Navarre here for defendants.
 9              THE COURT:  Good morning, Counsel.  Can the -- can
10    you hear them well enough for the record?
11              REPORTER:  Yes, sir.  Yes, Your Honor.
12              THE COURT:  Okay.  So gentlemen, we're here for a
13    motion to compel.  I've read through your briefings.  We don't
14    need to go through all of it, but I do have a question, start
15    with these.  When -- and I understand that it was not
16    agreeable, but when Noil made the proposal concerning
17    unredacted entries from attorney account that received the
18    funds and show a transfer to Neely or a member of his family
19    for a certain period, I just wanted to confirm there was no
20    response?
21              MR. ORTIZ:   That proposal was made in our discovery
22    conference that we had on the telephone the Friday before and I
23    said that that would not be acceptable because that would not
24    include a huge chunk of categories of transfers that are
25    relevant to my client's claims and that we need to know.  Mr.
```

1   Navarre said that his position, his client's position was

2   clear.  That was all he was willing to agree to and I said,

3   well, that would not be acceptable.

4          I said please go to your client.  Ask if they're

5   willing to, you know, agree to a larger scope than that and

6   then, you know, and remit them, you know, in the next week.  He

7   said, my position is clear.  He acknowledged that in several

8   different correspondence and he said, that's what I'm willing

9   to produce and that's it.

10          THE COURT:  Okay.

11          MR. ORTIZ:  And there was no more --

12          THE COURT:  Okay.  So, and Mr. Navarre, you addressed

13   that in your briefing, so I do want to hear from you, but I do

14   understand that there was no counter proposal that came back

15   after that.  So here's -- in looking at all of this, it seems

16   to me that this is the crux of the matter and the Court does

17   believe that the requests as made are somewhat over broad, but

18   I do also believe that the relevancy of these matters should be

19   pretty apparent.

20          So Mr. Ortiz, if -- I understand that the affiliates

21   were an issue.  It seems, given the response, of Mr. Navarre,

22   that's not an issue.  What other categories, besides Neely,

23   members of his family, affiliates, are you seeking?

24          MR. ORTIZ:  Your Honor, this entire case is about

25   that $600,000.

1           THE COURT:  Right.

2           MR. ORTIZ:  (indiscernible).  I want to know what was

3   done with those funds.  What was it used to pay, because that

4   goes to my conversion claims, my breach of contract claims.

5   You know, he told this Court that the $160,000 was left.  I'm

6   not trying to see every single transcript that deals with

7   (indiscernible) Maxim's funds.

8           I am only looking for what were my client's funds

9   used to pay and those items and if he can come to this court

10  and declare that out of the $600,000 only $160,000 is left, I

11  just want an accounting of how you arrive there at that

12  $160,000, what was done, and also the timing in which these

13  funds were paid out is extremely relevant given that the

14  contract term at issue here which is that the funds would stay

15  in the trade account until the first lift is confirmed you

16  know, as lifted.

17          THE COURT:  Mr. Ortiz, has there ever been an

18  interrogatory or a request for production that speaks to the

19  160 and how that figure was arrived at and how the defendant

20  knows that there's $160,000 left?

21          MR. ORTIZ:  Yes, that was objected to as well.  He

22  has indicated now and I think the response to the motion to

23  compel that 160 was what was left in the account on the -- I

24  don't know if that means what was left in the account on the

25  day of the TRO being entered or on the day that he was given

1   access to it and disclosed to this Court that $160,000 was

2   left.  But if only $160,000 was left in the account, it would

3   indicate to me that there's probably very few transfers that

4   need to be disclosed, but I think the timing in which those

5   transfers were made out of the account were extremely relevant

6   and the interrogatories do ask that he calculate that.

7          That was a discussion we had on the phone in our

8   discovery conference and he said he was not willing to provide

9   any of that substantive information in response to my

10  interrogatories.  And he asserts the same boilerplate objection

11  to my interrogatories as he does to my request for production.

12         THE COURT:  All right, Mr. Navarre.  I'll seek a

13  response, but again, I don't want to cut you short.  My

14  understanding is that you saw a counter proposal to that and

15  did not receive one.

16         MR. NAVARRE:  That is correct, Your Honor.  On

17  November 1st, I made proposal which I think was a bit different

18  than what we had discussed previously.  On November 2nd he said

19  that he would get (indiscernible) that day, he'd respond that

20  night.  I asked for a counter proposal.  At no point in time

21  did tell counsel, this is it, I'm not discussing this anymore.

22  This is all you're ever going to get from me.

23         I asked for another -- for a written proposal from

24  him so I would know what the proposal would be.  That's how you

25  reach agreements, I thought, is I make a proposal, you make a

1    proposal.  If he would've made a proposal back on that day and

2    my proposal had to be amended to include affiliates, I would've

3    said, no problem because we don't have an affiliate.  I never

4    got a written proposal back.  I never said, this is it.

5    Instead, what I got was I'll respond by the next day, I think

6    it was, or (indiscernible) that evening.  Didn't get a

7    response.

8         On November 5th, I got an email from which --

9    generally describe as self-serving and an our later, the motion

10   to compel was filed, meaning the motion to compel would've been

11   drafter prior to that.  I'm -- let me -- if I can address the

12   other thing, I told him during our discovery conference, the

13   $160,000, I had that number from my client because that was

14   what was left in the trade account, the approximate amount that

15   was left in the trade account on the day that the TRO in state

16   court was filed.

17        It's not a calculation.  It's not a calculation of

18   looking at different transfers in and out.  It was how much

19   money was left in the trade account.  As we've discussed

20   before, money is fungible.  I have not gone back and tracked

21   every transaction and that's really what these requests ask

22   for, every document concerning every transaction of the trade

23   account from not just now, not just now, but until three days

24   before trial and that's what I've been trying to get resolved.

25        The Court asked counsel, what other categories are

1   you seeking aside from Mr. Neely, his family, and affiliates.

2   I didn't -- I've never gotten an answer to that question.  I've

3   asked the same question and I don't think we've gotten an

4   answer to that question.  As the Court can see, this is

5   something that frankly should've been resolved, Your Honor.  I

6   agree.  If my client was transferring, you know, $10,000,

7   $25,000 into his pocket, that's relevant.

8           There's no doubt about it.  But if my client made a

9   deal with another company and, you know, those contracts, that

10  other transaction, that's not relevant to this.  And the Court

11  may be aware that all of these discovery requests by now are

12  supposedly geared towards this fraudulent transfer claim.  All

13  of these discovery requests were served and propounded before

14  any such claim existed in the case.  There was no claim.  I

15  mean, this goes beyond, you know, a fishing expedition when

16  they're trying to get the little tadpoles, too.

17          I mean, it really -- when you take them together.

18  And I've taken up too much of the Court's time, the parties'

19  time.

20          THE COURT:  No, that's okay.  No, I do appreciate it.

21  I do appreciate the briefing which got me up to speed.  So

22  here's where the Court is.  The Court will rule on the motion

23  to compel, if necessary, but I am going to give you one more

24  chance, because I do think that -- and I'll let you know what

25  the Court's thinking on the issue of the bank statements.

1      MR. ORTIZ:  I would like to make one point, Your

2  Honor.

3      THE COURT:  Yes, Mr. Ortiz.

4      MR. ORTIZ:  So these -- the requests for the bank

5  statements and -- are a tentacle to the requests I got from him

6  for my client's bank statements and I produced them.  They're

7  just as -- actually, mine are more narrow than his over-broad

8  requests for bank statements, and I produced my bank

9  statements.  I could show you his request for all of our

10  banking information and we produced those bank statements.

11      And my request, in my letter to him October 18th, I

12  said -- I asked him to produce documents related to or showing

13  the payments that were made with Maxim's $600,000 that Noil

14  refused to return to Maxim including any expenditures or

15  obligations paid by Noil with Maxim's funds, such as payments

16  to brokers, et cetera.  "Please confirm whether or not you will

17  produce these responsive documents and information related to

18  these requests."

19      And his response said, "Please note that I informed

20  you on Monday before you sent your letter that that Noil would

21  stand on the proposal we made Friday."  And that proposal he's

22  talking about is where he would produce information related to

23  transfers to a family member that exceeded $5,000 which he has

24  now disclosed don't include any additional transfers.  So what

25  he's proposing to do is nothing.  His proposal is no proposal

```
 1    at all, just like he said if he would produce information
 2    related to transfers to affiliates, because there are no
 3    affiliates.
 4             So the only proposals he's making aren't really
 5    proposals because I'm not getting anything in return, and these
 6    are the games that we're playing.  And so I just had to point
 7    those two things out, that they're identical, the requests from
 8    my client and -- but I did make a proposal for that
 9    information.  He said no, we're standing on my proposal.
10             THE COURT:  Mister --
11             MR. ORTIZ:  Thank you, Your Honor.
12             THE COURT:  Yes, go ahead.
13             MR. NAVARRE:  I don't have a problem producing
14    documents concerning payments (indiscernible).  That's not what
15    we're talking about.  That is something that would be relevant
16    to this transaction, Your Honor.  And to the extent that we --
17    you know, but frankly, I'm not sure they have any payments to
18    the brokerage, Your Honor.  If there are any documents on that,
19    that's not a problem to produce.  We talked about that.
20             As far as the bank statements that they produced to
21    us, if the Court may allow me to share my screen?
22             THE COURT:  Yes.
23             MR. NAVARRE:  It says the host disabled the
24    participant screen sharing.  There we go.  So as you can see,
25    Your Honor, these are the heavily redacted bank statements that
```

1    I received and have not complained about and my request for the

2    bank statements is different.  I wanted to show and was limited

3    in time to show that they did not have sufficient funds when

4    they told us they had sufficient funds to pay us.

5          That's all I wanted to show and frankly, I can show

6    it based upon what I got.  But these are redacted and our

7    request for bank statements is different than theirs.  I have

8    not gone back to ask for the other bank statements and all the

9    transactions that underlie these and all the documents underlie

10   these as they have.  That was my only point, Your Honor.  It's

11   not a goose-gander type of situation.

12          THE COURT:  So what is the reason --

13          MR. NAVARRE:  We were both --

14          THE COURT:  What is the reason --

15          MR. NAVARRE:  We were both --

16          THE COURT:  Go ahead.

17          MR. NAVARRE:  I'm sorry, Your Honor.  We were both

18   (indiscernible) interrupt you and I apologize for that.

19          THE COURT:  What's the reason for redaction on the

20   bank records, Mr. Navarre?

21          MR. NAVARRE:  The bank records I just showed you are

22   bank records from Maxim.

23          THE COURT:  But the records -- you had agreed you

24   were to produce unredacted records, but in the previous --

25          MR. NAVARRE:  Right.

```
 1              THE COURT:  -- we talked about redactions.  I
 2   presumed --
 3              MR. NAVARRE:  Yeah.
 4              THE COURT:  -- that a protective order could take
 5   care of issues related to why you want to redact, and here's
 6   why.  Instead of going round and round on this, what the
 7   Court's inclined to do is take your proposal, which is
 8   unredacted entries for the trade account of $5,000 or more and
 9   instead of to Steve Neely or a member of his family or
10   affiliates or anything else, just have for that time period,
11   have all of the bank statements showing everything that
12   happened until it got down to 160, have a protective order, and
13   then -- so that any information that shouldn't be disclosed is
14   not disclosed, but Mr. Ortiz can see how that fund went down to
15   160.
16              Would that not solve the problem, Mr. Ortiz?
17              MR. ORTIZ:  It would solve the problem for me and my
18   client has no problem entering into a protective order on
19   whatever it is necessary to protect that information from being
20   disclosed to any other third parties.
21              THE COURT:  Can I, instead of -- can I implore on --
22   I'm not going to implore.  I'm going to order the parties to
23   work on that agreement on getting that done so that my law
24   clerks don't have to go through this motion to compel line by
25   line and issue an order.  I'll give you ten days to get it
```

 1   done.

 2          But that's what -- that's where the Court is going to

 3   go, big picture, but I'll go in, what is it, with either a

 4   scalpel or a sledgehammer, but I'll come in and I'll give you a

 5   ruling on these and I do think that you're close.  I think that

 6   what Mr. Ortiz wants, is to see how the funds got spent down to

 7   zero.  A lot of it may be irrelevant, Mr. Navarre, but I think

 8   you can agree to do that.  A protective order should cure some

 9   of all of the ills, and that way we won't keep going round and

10   round on this matter.

11          MR. NAVARRE:  We'll definitely work towards that,

12   Your Honor and my guess is that if you were a surgeon, you'd

13   use a scalpel and not a sledgehammer.

14          THE COURT:  I don't know where -- I had a boss one

15   time that used to say that.  You want me to go in -- you want

16   to it yourself with a scalpel so I don't come in with a

17   sledgehammer?  It made an impression.  But no, certainly I

18   would give the time and the care to the motion to compel to

19   make sure that it's correct on the facts and the law, but I

20   think -- and I think both parties here can agree, it's always

21   much better for you to do it yourselves.

22          Okay --

23          MR. NAVARRE:  Understood, Your Honor.

24          MR. ORTIZ:  Understood, Your Honor.  If I may bring

25   up one other issue.

```
 1              THE COURT:  Yes, Mr. Ortiz.

 2              MR. TANENBAUM:  The redactions in defendant's

 3    production, they've also redacted names and email addresses of

 4    some people that they contact to procure naphtha later on in

 5    April, well after my client terminated the contract, but I

 6    think that the names of those people are -- where they were

 7    trying to procure that naphtha is relevant.

 8              I don't know why they would redact the people they're

 9    contacting to procure that naphtha and so I would ask that

10    those documents be produced unredacted.  Those people would

11    seemingly be persons of knowledge and relevant information to

12    the case and I think that I'm entitled to discover, you know,

13    their identity.

14              THE COURT:  Mr. Navarre?

15              MR. NAVARRE:  Yeah, I think once we get this

16    protective order in place, I don't think that's going to be an

17    issue, Your Honor.

18              THE COURT:  Okay.

19              MR. ORTIZ:  Thank you.

20              THE COURT:  Well, good.  Hopefully, I won't rule on

21    that, either, but it sounds like they are relevant and I do

22    want -- I am cognizant and aware that there are reasons for the

23    protective order, Mr. Navarre, so draft that up, get that done,

24    and let's see if we can put this one to bed.

25              MR. NAVARRE:  Sounds good.  Thank you, Your Honor.
```

```
 1              MR. ORTIZ:  Thank you, Your Honor.

 2              THE COURT:  Okay, thank you both.  You're both

 3    excused.

 4              MR. NAVARRE:  Thank you, sir.  And thanks to your

 5    staff also.

 6              THE COURT:  Thank you.

 7              MR. ORTIZ:  Yes, thank you.

 8

 9                 (Hearing adjourned at 10:47 a.m.)

10                        *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  December 27, 2021