**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAXIM CRUDE OIL, LLC<br>*PLAINTIFF*<br><br>V.<br><br>NOIL CORP., INC. AND MORRELL STEVE NEELY<br>*DEFENDANTS*<br><br>JAMES JENSEN<br>THIRD PARTY DEFENDANT | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL CAUSE 2:21-CV-00090 |

**COUNTER-DEFENDANTS MAXIM CRUDE OIL, LLC, AND JAMES JENSEN'S ANSWER TO DEFENDANT/COUNTER-PLAINTIFF NOIL CORP, INC.'S**
**<u>FIRST AMENDED COUNTERCLAIM</u>**
**[Related Docket #56]**

TO THE HONORABLE DAVID S. MORALES, UNITED STATES DISTRICT JUDGE:

Plaintiff/Counter-Defendant Maxim Crude Oil, LLC, and Third Party Defendant James Jensen ("Counter-Defendants") file its Answer to Defendant/Counter-Plaintiff Noil Corp, Inc.'s First Amended Counterclaim (Docket #56), and respectfully state the following:

## I.
## ANSWER

1. Upon information and belief, Counter-Defendants admit the first averments contained in Paragraph 1 of Defendant/Counter-Plaintiff's First Amended Counterclaim ("Counterclaim") and is without sufficient knowledge or information to form a belief as to the identity and location of Defendant/Counter-Plaintiff's "principal office."

2. Counter-Defendants admit the averments contained in Paragraph 2.

3. Counter-Defendants deny the averments contained in Paragraph 3.

4. Counter-Defendants admit the averments contained in Paragraph 4.

5. Counter-Defendants admit the averments contained in Paragraph 5.

6. Counter-Defendants admit that they told Jennifer Watson they wanted to procure Naptha product, that it had experience in the oil fuel buying business, and had been buying product from Valero, but deny it told Ms. Watson that Valero had said it would continue to provide Naptha for Maxim but had been unable to perform in a timely manner as described in Paragraph 6. Counter-Defendants deny telling Ms. Watson how much in funds it had available for purchasing the Naptha. Counter-Defendants deny the remaining averments contained in Paragraph 6.

7. Counter-Defendants admit that certain documents dealing with Valero contained a provision that stated Maxim could not deliver product that was to be exported to Mexico, but deny the remaining averments contained in Paragraph 7. Counter-Defendants deny that it ceased purchasing Naptha product from Valero for the reasons stated in Paragraph 7. Counter-Defendants ceased purchasing Naptha from Valero due to issues Valero had in getting its Three Rivers Refinery internal piping system to provide Naptha to its trucking rack.

8. Counter-Defendants admit that Maxim entered into the Crude Products Agreement with Noil dated March 15, 2021 described in Paragraph 8, which document speaks for itself. Counter-Defendants admit that the Crude Products Agreement contains the provisions quoted in Paragraph 8.

9. Counter-Defendants admit that the Crude Products Agreement Maxim entered into with Noil contains payment terms that, "except at Noil Corp. Inc.'s option", require payment be tendered to Noil before delivery or pickup for crude products purchased under the agreement, which document speaks for itself. Counter-Defendants deny that Maxim was required to pay $2,795,877 for the first quantity of Naptha as described in Paragraph 9, as the Naptha was never delivered and the price according to the Crude Products Agreement provided that the price for the Naptha would be the price in effect at the time and place of each delivery for the particular product, grade, quantity and type of

delivery involved, and because the product was not delivered during the required timeframe no price could be calculated. Counter-Defendants admit that the Crude Products Agreement and the invoice were executed by James Jensen on behalf of Maxim, and admit that the pricing provision provides for the price to be $0.03 cents per gallon less than Opis Benchmark Pricing based on current month daily closing price and based on a 3-day average, however Counter-Defendants deny that the price on the invoice would apply to product not delivered during the month of March.

10. Counter-Defendants admit that Maxim did not pay $2,795,877 by the date stated in the invoice, and admit that Maxim never paid the entire $2,795,877, and admits it would have been contractually obligated to pay the amount described in Paragraph 10 if Noil had timely delivered the product but denies that Maxim was contractually obligated to pay $2,795,877 prior to delivery of the product.

11. Counter-Defendants are without sufficient knowledge or information to form a belief as to the averments in the first, second, third, and fourth sentence of Paragraph 11. Counter-Defendants deny that Maxim requested the product to come from Valero Three Rivers terminal near Corpus Christi, as it had already been told by Valero that the Naptha product would not be available at this terminal. Counter-Defendants deny Noil was working with Valero to get set to start lifting the product.

12. Counter-Defendants are without sufficient knowledge or information to form a belief as to what Noil was told by Valero. Counter-Defendants are without sufficient knowledge or information to form a belief as to whether Noil actually received a commitment from Valero for the product, but admits that Noil represented to Maxim that it had received a commitment from Valero for the product. Counter-Defendants admit that as far as Maxim is aware Noil did not obtain product from Valero, and admits that Maxim was told by Valero Naptha would no longer be accessible at that particular terminal described in Paragraph 12.

13. Counter-Defendants are without sufficient knowledge or information to form a belief as to whether Noil continued to try and source the product for Maxim, or whether Noil identified product that could be sourced for Maxim. Counter-Defendants are without sufficient knowledge or information to form a belief as to the last sentence contained in Paragraph 13.

14. Counter-Defendants admits that Jensen was involved in litigation in which it was alleged entities he owned sold product stolen by other parties and admits that Maxim previously had its company charter forfeited but had it subsequently reinstated. Counter-Defendants admit the remaining averments contained in Paragraph 14.

15. Counter-Defendants admit the first and second sentence contained in Paragraph 15. Counter-Defendants are without sufficient knowledge or information to form a belief as to the last sentence in Paragraph 15.

16. Counter-Defendants incorporates by reference its responses to Paragraphs 1 through 15 of the Counterclaim.

17. Counter-Defendants denies the averments contained in Paragraph 17.

18. Counter-Defendants denies the averments contained in the paragraph (incorrectly) titled Paragraph 20 in the Counterclaim.

19. Counter-Defendants denies the averments contained in the paragraph (incorrectly) titled Paragraph 21 in the Counterclaim.

20. Counter-Defendants denies the averments contained in the paragraph (incorrectly) titled Paragraph 22 in the Counterclaim.

21. Counter-Defendants incorporates by reference its responses to Paragraphs 1 through 15 of the Counterclaim.

22. Counter-Defendants admit that Noil and Maxim executed the Crude Products Agreement

and Invoice described in Paragraph 24, which documents speak for themselves.

23. Counter-Defendants admit that the Crude Products Agreement and Invoice contained terms excerpted in Paragraph 25, but denies the remaining averments contained in Paragraph 25. Counter-Defendants denies Maxim was contractually obligated to perform any obligations after the terms were altered, Noil breached the agreement, and the agreements were terminated. Counter-Defendants denies Maxim breached the Crude Products Agreement and Invoice.

24. Counter-Defendants denies the averments contained in the paragraph titled Paragraph 26 in the Counterclaim.

25. Counter-Defendants denies all conditions precedent have been satisfied by Counter-Plaintiff as alleged in Paragraph 27.

26. Counter-Defendants incorporates by reference its responses to Paragraphs 1 through 15 of the Counterclaim.

27. Counter-Defendants admit that a controversy between the parties exists as to their respective obligations and rights under the agreements as alleged in Paragraph 29.

28. Counter-Defendants admit the averments contained in Paragraph 30.

29. Paragraph 31 is not a factual averment but rather a request for certain judicial declarations from the Court.

30. Paragraph 32 is not a factual averment but rather a request for certain judicial declarations from the Court.

31. Counter-Defendants incorporates by reference its responses to Paragraphs 1 through 15 of the Counterclaim.

32. Paragraph 34 is not a factual averment but rather a request for attorneys' fees, to which no response is required.

33. With respect to Paragraph 35, Counter-Defendants deny that Defendant/Counter-Plaintiff is entitled to recover the requested relief.

34. With respect to Paragraph 36, Counter-Defendants deny that all conditions precedent for the recovery of attorneys' fees, costs, and interests have been met.

35. Paragraph 37 is not a factual averment but rather is Defendant/Counter-Plaintiff's jury demand, to which no response is required.

36. Any averment which is not specifically admitted is denied.

## II.
## <u>DEFENSES</u>

37. Pursuant to Rule 9(b), the Counterclaim fails to allege the fraud claims with the required particularity.

38. Pursuant to Rule 12(b)(6), the Counterclaim fails to state any claim upon which relief can be granted against Defendant James Jensen.

39. Noil is not entitled to any relief because Noil breached the very agreement it is attempting to enforce and was the first party to breach.

40. Noil waived the provisions of the agreements it now seeks to enforce.

41. Noil is not entitled to any relief because it failed to perform the conditions precedent to bring its claims.

42. Noil is not entitled to any relief because it failed to mitigate its damages.

43. Noil is not entitled to any relief because it committed fraud.

44. To the extent Counter-Defendants failed to perform in any aspect, such failure is excused by Defendant/Counter-Plaintiff's improper conduct and the terms of the Crude Product Agreement, including the terms that allow the terms to be altered upon agreement between the parties as well as Maxim's termination of the agreement in accordance with its terms, among other things.

45. Defendant James Jensen is not liable in the capacity in which he was sued.

Dated: December 28, 2021.

Respectfully Submitted,

*/s/ Antonio Ortiz*

Antonio Ortiz
State Bar # 24074839
Shelby A. Jordan
State Bar # 11016700
**JORDAN & ORTIZ, P.C.**
500 N. Shoreline, Suite 900
Corpus Christi, Texas, 78401
Telephone: (361) 884-5678
Telecopier: (361) 888-5555
Email: aortiz@jhwclaw.com
sjordan@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2021, a true and correct copy of the foregoing was served on the parties listed below via the court's CMECF electronic filing or via email.

Matthew R. Beatty (mbeatty@bnsfirm.com)
Michael L. Navarree (mnavarre@bnsfirm.com)
Beatty Navarre Strama, PC
901 S. MoPac Expy.
Building 1, Suite 200
Austin, Texas 78746

*/s/ Antonio Ortiz*
Antonio Ortiz