United States District Court
Southern District of Texas
**ENTERED**
October 23, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAXIM CRUDE OIL, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00090 |
| | § | |
| MORRELL STEVE NEELY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff has filed a motion to enforce the settlement agreement, and also requests an award of attorney fees and imposition of sanctions. (Doc. No. 137.) The defendants have responded. (Doc. No. 139.) The motion has been referred to the undersigned. For the reasons discussed below, the district court should GRANT the motion to enforce the settlement agreement, GRANT the motion for attorney fees, and DENY the motion for sanctions.[1]

**A. *Jurisdiction.***

The district court has jurisdiction over this diversity case pursuant to 28 U.S.C. § 1332. The pending motion has been referred to the undersigned for review and action pursuant to 28 U.S.C. § 636.

**B. *Background, and the motions.***

This case was removed to this Court from Texas state court. (Doc. No. 1.) As relevant here, Plaintiff Maxim Crude Oil, LLC ("Maxim") sued Defendants Morrell Steve Neely

---

[1] This memorandum is the public version of a memorandum and recommendation that filed under seal because it discusses the details of the parties' confidential settlement agreement in this case. This unsealed public version redacts the settlement agreement details, and makes a few minor wording changes (but no factual or analytical changes) as the undersigned has determined appropriate. Provisions of the settlement agreement that the parties have included in their public filings, however, are not redacted.

("Neely") and Noil Corp, Inc. ("Noil") for fraudulent misrepresentation, fraud by non-disclosure and omission, and breach of contract, as well as lodging equitable claims for unjust enrichment, money had and received and for turnover of funds, and breach of fiduciary duty and conversion. *Id.* at 17-22.  After removal, Plaintiff amended its complaint and alleged the same claims, and also added claims for fraudulent transfer under two provisions of the Texas Business and Commerce Code.  (Doc. No. 29, pp. 19-30.)  Defendants counterclaimed: their operative pleading alleged fraudulent misrepresentation by Plaintiff and its sole owner, James Jensen ("Jensen") and breach of contract by Maxim.  (Doc. No. 56, pp. 6-7.)

After some discovery and motion practice, the district court ordered the parties to mediation.  *See* Minute Entry, Apr. 12, 2022.  Mediation was set for May 11, 2022 with United States Magistrate Judge Jason B. Libby.  (Doc. No. 113.)  But before mediation could take place, one of the two entitles representing Neely and Noil moved to withdraw.  In its motion, the law firm of Beatty Navarre Strama, P.C. ("Beatty Navarre") and attorneys Michael Navarre and Matthew Beatty stated that pursuant to Rule 1.16 of the Model Rules of Professional Conduct and Rule 1.15 of the Texas Disciplinary Rules of Professional Conduct,[2] "grounds exist to allow the Firm's withdrawal from representing Defendants.  Additionally, good cause exists for the Firm's withdrawal from representing Defendants."  *Id.* at 1.  Beatty Navarre and attorneys Navarre and Beatty stated that Neely and Noil did not consent to the withdrawal, but that it had provided a copy of the motion to them and notified them of their right to object to the withdrawal motion.  *Id.* at 2 ¶ 5.  The motion was not ruled upon prior to the mediation.

---

[2] These are both rules of professional responsibility governing attorney conduct.  Both rules address termination of representation.  The Texas rule was redesignated as of October 1, 2024, as Texas Disciplinary Rule of Professional Conduct 1.16.

The parties proceeded to mediation on May 11, 2022 with Judge Libby. That mediation resulted in an agreement for full settlement of all claims among the parties. *See* Doc. No. 123. The confidential terms of the settlement were read into the record in open court. Under the agreement, in relevant part:

> The defendants will pay plaintiffs a total of $[redacted]. $[redacted] of this amount will be paid … on or before June 1st, 2022. That's $[redacted] is due on June 1st, 2022. An additional $[redacted] of the $[reacted] total amount will be due on September 1st, 2022. The remaining balance, which is $[redacted], will be due to be paid by the defendants to plaintiffs in monthly installments of $[redacted] and paid on a monthly basis. The first $[redacted] installment is due to be paid and shall be paid on October 1st, 2022, and then after that, the next $[redacted] payment will be due on November 1st, 2022, the first of each month until paid. And by my math, I think the last payment will be $[redacted], but the total of the remaining balance is $[redacted].

(Doc. No. 143, p. 6.) This case was to be dismissed after September 1, 2022, provided Neely had paid the initial two payments totaling $[redacted]. *Id.* at 7. If Neely failed to make payments as agreed, then after a notice period the remainder of the payments would be accelerated, become immediately due, and begin accruing interest. *Id.*

After Judge Libby read the settlement terms into the record, counsel for all parties agreed that those terms were correct. (Doc. No. 143, p. 8.) Judge Libby then placed Jensen and Neely under oath. *Id.* at 9-10. Jensen swore that he had authority to bind Maxim in the settlement and that he understood, agreed to, and accepted the terms of the settlement as set forth on the record, both individually and on behalf of Maxim. *Id*. at 10, 12. Neely likewise swore that he had the authority to bind Noil in the settlement and that he understood, agreed to, and accepted the terms of the settlement as set forth on the record, both individually and on behalf of Noil. *Id.* at 11, 12. Judge Libby ordered the parties to submit final dismissal documents on or before September 7, 2022. *See* Doc. No. 128. After the mediation, Judge Libby denied all pending motions without

prejudice as moot, including the motion to withdraw filed by the defendants' counsel. (Doc. No. 124.)

Neely and Noil failed to pay the money as required by the settlement agreement, and September 7 came and went without the filing of dismissal documents. Judge Libby held a status conference and was told that Defendants had failed to make the $[redacted] payment that had been due on September 1, 2022; counsel for Defendants stated that Neely had indicated that he would be able to make that payment by September 30. An October 2022 status conference revealed, however, that Neely still had not made the $[redacted] payment, and that Neely had told his counsel that he needed three more weeks to make that payment. Neely had made the first of his $[redacted] monthly payments, but at the time of the status conference had missed the second payment. During the hearing, Neely told Judge Libby that he believed he would be able to pay off the entire settlement amount (not just the missed payments) on or before November 11, 2022.

No further action occurred in this case for nearly another year. In a status conference held in September 2023, counsel for Maxim told the district court that only part of the amount due had been paid; counsel for Neely and Noil stated that Neely would be obtaining a Small Business Administration loan to pay the remainder of the settlement amount. *See* Minute Entry, Sept. 20, 2023. An October 2023 status report by counsel for Neely and Noil filed a status report in October 2023, relating that Neely had stated to counsel that "he will make another payment of $50,000 … by November 15, 2023." (Doc. No. 130, p. 1.) A November 30, 2023 status report by Maxim's counsel indicated that Neely never made that payment, but that Neely had told his counsel that he would make a payment of $12,500 within the next two weeks. (Doc. No. 132, p. 1.) Neely did not make that payment, either. (Doc. No. 133, p. 1.) Neely sent a $5,000 check to

Maxim's counsel in December 2023, but that check bounced. *Id.* Neely told his counsel that "he is working toward making additional payments." *Id.* at 2.

In a February 2024 status conference, Maxim's counsel estimated that $227,000 had been paid toward the agreed-upon settlement amount, with $168,000 remaining outstanding exclusive of accrued interest. *See* Minute Entry, Feb. 1, 2024. Counsel for the defendants stated that Neely intended to continue making payments. *See id.* The district court told the parties to confer and reach a scheduled payment agreement, and that the court would entertain a motion to enforce the settlement agreement and for attorney fees. (Doc. No. 135.) A March 2024 status report from Maxim indicated that Neely had made no further payments and that Neely's counsel had not made any proposal for resolving the outstanding settlement obligations. (Doc. No. 136, p. 2.)

Maxim then filed the motion to enforce the settlement agreement. (Doc. No. 137.) That motion states, in part:

> Defendants were obligated to pay a total settlement of $415,000 according to a certain payment schedule. Unfortunately, Defendants defaulted on the Settlement Agreement not long after the agreement was entered into when the Defendants failed to make a required payment of $120,000 on September 1, 2022, and have failed to cure the default despite Plaintiff giving Defendants ample opportunities to do so. Out of the total settlement of $415,000, only $247,000 has been paid, leaving a remaining total of $168,000. Furthermore, Plaintiff has not received any payments (that was not returned for insufficient funds) since July 7, 2023.

*Id.* at 2 ¶ 6. Maxim also asserts: "It is undisputed that Defendants are in breach of the Settlement Agreement because they have not paid and continue to refuse to pay the amounts owed under the Settlement agreement." *Id.* at 3 ¶ 10. Maxim asks the Court to order the defendants to pay the remaining balance of $168,000.

Maxim also alleges that the defendants never had any intention of fulfilling their settlement obligations. A motion for a finding of contempt was pending at the time of the 2022

mediation, in which Maxim had alleged that Noil and Neely were dissipating funds from an account that the district court had ordered be left untouched pending the outcome of this litigation. *See* Doc. No. 101. Maxim alleges that the defendants entered into the settlement agreement so that they "could avoid having to go forward with the hearing on the Motion for Contempt with no defense or explanation of its repeated and willful violations of this Court's orders." (Doc. No. 137, p. 2 ¶ 8.) Maxim continues: "[O]ne such transfer was in violation of the Court's [preliminary injunction] was the $20,000 retainer paid to Defendants' counsel, which was then redacted (by counsel who received the transfer) in the document production to Plaintiff despite being over the $5,000 threshold that were ordered to be unredacted." *Id.* at 2-3 ¶ 8. Noting that the settlement agreement allowed Neely to avoid an undischargeable fraud judgment and a contempt finding (among other potential consequences), Maxim therefore also seeks sanctions against the defendants,[3] stating: "A court may impose sanctions under its inherent power on an attorney for the attorney's negligent or reckless failure to perform his responsibilities as an officer of the court." *Id.* at 3-4 ¶¶ 9, 11. These sanctions would be assessed in addition to the $168,000 remaining balance. *Id.* at 4 ¶ 13. Maxim also seeks an award of $10,000 in attorney fees for the 25 hours allegedly spent in matters pertaining to collection of the remaining settlement funds and the filing and drafting of the pending motion. *Id.* ¶ 12. Alternatively, Maxim seeks an order declaring that the defendants breached the settlement agreement to awarding Maxim damages, reasonable attorney fees, expenses, costs, and pre- and post-judgment interested for the breach. *Id.* ¶ 14.

After the filing of the motion to enforce the settlement agreement, Beatty Navarre again sought to withdraw, citing the same grounds as before. (Doc. No. 138.) Counsel also filed a

---

[3] Maxim does not appear to seek sanctions against counsel for the defendants.

short response to the motion to enforce, arguing that Neely had informed counsel that he still intends to pay the remaining settlement amount.  (Doc. No. 139, p. 1 ¶ 1.)  Neely, the response states, "stated that he has had some financial problems which he plans to have resolved within the next 60 to 90 days."  *Id.* ¶ 2.  The response does not deny that the $168,000 balance on the settlement agreement remains unpaid.  The response does argue that Maxim's request for sanctions "is not supported by any legal authority and its request for attorney's fees should also be denied as lacking in a factual and legal basis."  *Id.* at 2 ¶ 3.  At a hearing on September 12, 2024, the district court orally denied Beatty Navarre's motion to withdraw.[4]

### D.  Law and discussion.

#### 1.  Enforcement of settlement agreement.

The district court should GRANT the motion to enforce the settlement agreement.  At the conclusion of the mediation, Judge Libby read the settlement terms into the record.  (Doc. No. 143, p. 6.)  After Judge Libby read the settlement terms into the record, counsel for all parties agreed that those terms were correct.  *Id.* at 8.  Judge Libby then placed Jensen and Neely under oath.  *Id.* at 9-10.  Jensen swore that he had authority to bind Maxim in the settlement and that he understood, agreed to, and accepted the terms of the settlement as set forth on the record, both individually and on behalf of Maxim.  *Id.* at 10, 12.  Neely likewise swore that he had the authority to bind Noil in the settlement and that he understood, agreed to, and accepted the terms of the settlement as set forth on the record, both individually and on behalf of Noil.  *Id.* at 11, 12.

"A district court has inherent power to enforce settlement agreements in cases pending before it."  *Richardson v. Famous Bourbon Mgmt. Gp., Inc.*, 857 F. App'x 182, 184 (5th Cir.

---

[4]  The district court allowed Beatty Navarre and its attorneys to urge reconsideration of its denial of the withdrawal motion.  *See* Doc. No. 141.  The reconsideration of that denial is addressed in a separate order being filed today.

2021) (per curiam) (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386 (5th Cir. 1984)).  The construction of settlement agreements in diversity cases is governed by state law. *See Oliver v. Kroger Co.*, 872 F. Supp. 1545, 1547 (N.D. Tex. 1994).  In this case, Texas Rule of Civil Procedure 11 governs the analysis.  In *Anderegg v. High Standard, Inc.*, the Fifth Circuit found that Texas Rule 11, although labeled as a rule of civil procedure, is in fact a rule of substance akin to the parol evidence rule.  825 F.2d 77, 80 (5th Cir. 1987).  The rule states:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex. R. Civ. P. 11.  For the in-court oral exception to apply, a statement of the settlement must provide "the substantial equivalent of a writing and signatures: a statement into the record of the terms of the agreement in the presence of the court, plus the agreement of the parties (or their counsel) to be bound by it affirmatively stated on the record." *Anderegg*, 825 F.2d at 81.

That is exactly what happened here.  The settlement terms were read into the record by Judge Libby in open court, with all parties and their counsel expressly agreeing to those terms. Texas Rule 11 has been complied with, so the settlement agreement was adequately recorded.

"To determine if a settlement agreement is an enforceable contract, 'the moving party must prove that the parties reached an agreement regarding all material terms.'" *Lee v. Gulf Coast Blood Center*, Civ. No. H-19-4315, 2020 WL 4700896, at *3 (S.D. Tex. Aug. 13, 2020) (Rosenthal, C.J.) (quoting *Lozano v. Metro. Transit Auth. of Harris Cnty.*, Civ. No. H-14-1297, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016) (Miller, J.)).  That requirement is satisfied here as well: the agreement contains the total amount of the settlement payment to be made to

Maxim by the defendants and the terms of those payments.  The undersigned finds that the settlement agreement, as read into the record, contains all material terms.

Because the parties reached agreement on all material terms, the burden falls to the non-moving party – here, the defendants – to prove that the settlement agreement is "tainted with invalidity and should not be enforced."  *Lozano*, 2016 WL 3906295, at *3.  But the defendants do not contest that the settlement agreement is binding and enforceable: although they argue that Neely intends to pay the owed amounts, they do not contend that the agreement itself is unenforceable or invalid or that any material provisions were not agreed upon.  *See* Doc. No. 139, p. 1.  The undersigned therefore concludes that the settlement agreement is valid, properly recorded, binding, and enforceable.  The district court should grant Maxim's motion to enforce the settlement agreement.  The district court should also direct Maxim to submit a proposed final judgment in this case.

### 2. Attorney fees and sanctions.

Maxim additionally seeks imposition of attorney fees and sanctions against the defendants.  (Doc. No. 137, p. 3 ¶ 10; *id.* at 4 ¶ 12.)  The district court should GRANT the request for attorney fees, but should DENY the request for sanctions.

Maxim argues that the defendants did not merely breach the settlement agreement, but also that the defendants never intended to comply with their obligations under that agreement.  (Doc. No. 137, pp. 2-3 ¶ 8.)  In Maxim's view, the defendants entered into the settlement agreement in order to avoid a possible contempt finding by the district court regarding unauthorized dissipation of assets from a trade account.  *Id.*  As a result, Maxim says, the defendants "avoided a fraud judgment that would be nondischargeable in any bankruptcy proceeding," avoided a contempt finding, and avoided a potential order to transfer the trade

account assets into the Court's registry. *Id.* at 3 ¶ 9. Maxim therefore asks the Court to award $10,000 in attorney fees and "at least $25,000" in sanctions against the defendants. *Id.* at 3 ¶ 10, *id.* at 4 ¶ 12. Maxim does not explain in its motion how it arrived at the "at least $25,000" figure for sanctions. As authority for its request, Maxim asks the Court to invoke its inherent power to impose sanctions on a person for bad-faith conduct, willful disobedience of a court order, or fraud upon the court. *Id.* at 3 ¶ 11.[5]

### a. Attorney fees.

A court may impose attorney fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-29 (1975)). In this circuit, a party's refusal to abide by a settlement agreement without justification qualifies as vexatious behavior that can support the award of attorney fees. *See Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012); *Landry's LLC v. Houston Interactive Aquarium & Animal Preserve LLC*, No. 4:23-cv-01229, 2024 WL 992763, at *2 (S.D. Tex. Feb. 28, 2024) (Edison, M.J.).

Here, as discussed above, the parties agreed to the terms of the settlement on the record before a federal judge. The defendants have failed to pay as agreed. The defendants have also repeatedly failed to meet and confer as directed by the district court to work toward a proposal for payment of the remaining settlement money due. *See* Doc. No. 136, pp. 1-2. Defendants respond that Neely has paid $247,000 to Maxim but "has had some financial problems which he

---

[5] Maxim also states: "A court may impose a sanction under its inherent power on an attorney for the attorney's negligent or reckless failure to perform his responsibilities as an officer of the court." *Id.* at 3-4 ¶ 11 (citing *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000)). Maxim does not, however, ask for imposition of sanctions against the defendants' attorneys.

plans to have resolved in the next 60 to 90 days."  (Doc. No. 139, p. 1 ¶ 2.)  The defendants state

that Neely "will provide updates to the Court and Maxim."  *Id.*  But no such updates have been

provided, at least not to the Court.  The defendants offer no explanation of Neely's alleged

financial problems and no justification for their failure to at least meet and confer regarding

future payments as ordered by the district court.  This, combined with the defendants' failure to

pay any amount since July 2023, *see* Doc. No. 137, p. 2 ¶ 6, evinces a vexatious refusal to

comply with the terms of the settlement.  An award of attorney fees is appropriate.  The district

court should GRANT the motion for award of attorney fees, and should direct Maxim to submit

an affidavit and accounting of the fees it has expended to enforce the parties' settlement

agreement.

> ### b.  *Sanctions.*

It is true, as Maxim points out (Doc. No. 137, p. 3 ¶ 11), that federal courts possess the

inherent power to manage their own affairs to achieve the orderly disposition of cases.  *See*

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017); *In re Goode*, 821 F.3d 553,

558-59 (5th Cir. 2016).  That authority includes "'the ability to fashion an appropriate sanction

for conduct which abuses the judicial process.'"  *Goodyear*, 581 U.S. at 107 (quoting *Chambers*,

501 U.S. at 44-45).  But *Goodyear* also stresses that such sanctions "must be compensatory

rather than punitive in nature."  *Id.* at 108.  It may go no further than to redress the party for

losses sustained, and it may not "impose an additional amount as punishment for the sanctioned

party's misbehavior."  *Id.*  "Compensation for a wrong, after all, tracks the loss resulting from

that wrong."  *Id.*  Sanctions imposed pursuant to a court's inherent power must be "exercised

with restraint and discretion," and even then are appropriate only when sanctions are necessary

to correct a wrong against the court as an institution, not to punish injury to a single litigant.  *See*

*Pruco Life Ins. Co. v. Villarreal*, Civ. No. H-17-2795, 2022 WL 14915624, at *3 (S.D. Tex. Oct. 25, 2022) (Rosenthal, C.J.) (quoting *Chambers*, 501 U.S. at 44).

Maxim's frustration is evident, but its assertion of bad faith is too speculative to warrant imposition of sanctions beyond the attorney fees discussed above.  Although the defendants have failed to pay the agreed-upon settlement moneys, Maxim's assertion that the defendants never intended to pay is not supported by any evidence of bad faith conduct that occurred after the settlement was agreed upon.  Absent such evidence, Maxim's request is really one for a punitive sanction, not a compensatory one.  Maxim states that it seeks an award of "damages for past and ongoing breaches of the Settlement Agreement, including reasonable attorney's fees, expenses, [and] costs for this breach," *see* Doc. No. 137, p. 3 ¶ 10, but aside from the attorney fees discussed above Maxim offers no argument or quantification of any damages it suffered after the mediation other than its non-receipt of the settlement proceeds and any accrued interest, sums to which Maxim is already entitled under the settlement agreement itself.  What's more, Maxim's sanctions request asks the Court "to enter an order for monetary sanctions of at least $25,000 against Defendants on top of the attorneys' fees." *Id.*  This request, reduced to its essence, seeks imposition of punishment for misbehavior, not for any form of compensation to Maxim.  *Cf. Goodyear*, 501 U.S. at 108.  The district court should deny Maxim's request for sanctions beyond the attorney fees already recommended.

### E.  Conclusion and recommendations.

The district court should take the following actions:

- GRANT Maxim's motion to enforce the settlement agreement (Doc. No. 137), and DIRECT Maxim to submit a proposed judgment within 14 days after granting

the enforcement motion.  The district court should then enter judgment in this
case.

- GRANT Maxim's motion for attorney fees, and DIRECT counsel for Maxim to
  submit an affidavit and an accounting of the fees it has expended to enforce the
  parties' settlement agreement within 14 days after granting the enforcement
  motion.

- DENY Maxim's motion for sanctions.

### F.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each
party or counsel.  Within 14 days after being served with a copy of the Memorandum and
Recommendation, a party may file with the Clerk and serve on the United States Magistrate
Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1),
and General Order No. 2002-13, United States District Court for the Southern District of Texas.
A failure to file written objections to the proposed findings, conclusions, and recommendation in
a magistrate judge's report and recommendation within 14 days after being served with a copy
shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-
to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v.
United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on October 23, 2024.

MITCHEL NEUROCK
United States Magistrate Judge